IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


JUDSON ANDERSON, et al.,           :     CIVIL ACTION
                                   :     NO. 16-6111
          Plaintiffs,              :
                                   :
     v.                            :
                                   :
STONEMOR PARTNERS, L.P., et al.,   :
                                   :
          Defendants.              :


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                    October 31, 2017


          This is a consolidated class action arising out of

Plaintiffs' purchase of common units[1] in StoneMor, L.P.

("StoneMor") which provides funeral and cemetery services and

products. Defendants include StoneMor; StoneMor G.P.; StoneMor

GP's parent company, American Cemeteries Infrastructure

Investors, LLC ("ACII"); and the controlling shareholder-

executives ("Defendants"). CAC ¶ 25-37, ECF No. 67. Plaintiffs

are investors who purchased common units of StoneMor between

March 15, 2012 and October 27, 2016 (the "Class Period"). Id. at

1. The Amended Complaint contains two counts. Count One alleges

violations of Section 10(b) of the Securities Exchange Act and

---

[1] StoneMor is a master limited partnership which publicly trades
securities referred to as "units." CAC ¶ 26, ECF No. 67. These
units are traded similarly to shares of stock.

SEC Rule 10(b)5 promulgated thereunder. Id. at 101. Count Two alleges violations of Section 20(a) of the Securities Exchange Act. Id. at 102.

On February 21, 2017, the Court appointed Fremont Investor Group ("FIG") as lead counsel, and approved FIG's selection of counsel. ECF No. 64. On April 24, 2017, FIG filed an amended consolidated class action complaint ("Complaint"). ECF No. 67. On June 8, 2017, Defendants moved to dismiss. ECF No. 68. For the reasons that follow, the Court will grant the motion to dismiss.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff alleges the following facts, all of which are presumed to be true for purposes of resolving the motion to dismiss. During the Class Period, Defendants issued materially false and misleading statements regarding its business and financial performance. Id. at ¶¶ 130-31, 136, 209-10. The alleged purpose of these statements was to create the appearance that Defendants were economically able to meet "their *primary corporate purpose*: the regular, quarterly distribution" of available cash to investors. Id. at ¶ 1 (emphasis in original). Plaintiffs claim that, unbeknownst to investors, StoneMor was actually "severely cash-strapped" during the Class Period, and only able to pay its generous distributions through "an

elaborate financial ruse." Id. at ¶ 2. In essence, the "ruse" was that StoneMor paid the distributions from its revolving credit facility, which in turn was paid down through the proceeds from a series of equity offerings. Id.

Plaintiffs argue that they were misled into believing that the primary source of distribution funds was "operating cash flow," when, in reality, cash to fund distributions was "almost entirely dependent" on StoneMor's "ability to sell equity in the capital markets." Id. at ¶¶ 1-2. StoneMor's business plan was to aggressively acquire cemeteries and immediately build a "pre-need" sales program by selling to customers who are still alive, but want to pre-arrange their own funeral arrangements. Id. at ¶ 11. However, state law requires that the majority of the total pre-need sales proceeds be kept in trust until the actual burial services are performed. Id.

Thus, StoneMor could not access most of the cash from pre-need sales until after the customer died. Id. Because pre-need sales were such a large portion of StoneMor's business strategy, the inaccessibility of cash from them created a substantial disparity between overall sales and actual incoming cash. Id. at ¶ 12. Under GAAP[2] principles, cash from pre-need sales would not be represented as assessable cash. Id. at ¶ 11. However, StoneMor did not rely solely on GAAP metrics to court

---

[2] Generally Accepted Accounting Principles. See id. at ¶ 2.

investors. Id. at ¶ 12. Instead, StoneMor also presented

investors with non-GAAP figures it had created, which showed

sales and costs for each period, but did not subtract the cash

in trust. Id. at ¶¶ 3, 7, 11-12, 14. According to the

Plaintiffs, the difference between the actual available cash and

the non-GAAP measures of apparently available cash (that was

still in trust) was unknown to investors. Id. at ¶ 14.

Plaintiffs further claim that the difference between the GAAP

and non-GAAP measures "intentionally gave the impression that

StoneMor was generating sufficient operating cash flow to

justify . . . the cash distributions" and concealed the

"material divergence between the cash distribution payments and

the amount and timing of revenue and cash flows generated from

operations." Id. at ¶ 14, 69. But, accurate GAAP measurements

consistently appeared alongside the non-GAAP ones. Id. at ¶ 69.

Next, Plaintiffs allege that StoneMor's financial

"house of cards" came down when StoneMor issued corrective

disclosures concerning previously publically-filed financial

statements. Id. at ¶¶ 17-19. The corrections stated that recent

auditing had revealed "material weaknesses" in certain sets of

internal controls. Id. at ¶ 198. This curtailed StoneMor's

access to capital markets, which caused StoneMor to cut its

distribution by approximately half. Id. at ¶¶ 201-06. Plaintiffs

claim that because StoneMor slashed its distribution, StoneMor's

unit price dropped by almost forty-five percent. <u>Id.</u> at ¶¶ 202-204.

In sum, Plaintiffs allege that Defendants concealed how StoneMor's distributions were, indirectly, funded with the use of debt/equity, which allegedly concealed the risk that distributions would be cut significantly if StoneMor's access to the capital markets was ever impaired. <u>Id.</u> at ¶¶ 136, 166. The allegedly false and misleading statements can be broken down into four categories:

> <u>Category A:</u> Statements lauding StoneMor's strength or health in connection with a particular quarter's distribution announcement;
> <u>Category B:</u> Statements regarding the connection between operations and distributions;
> <u>Category C:</u> Statements that equity offerings were used to pay down StoneMor's debt facility; and
> <u>Category D:</u> Certification statements required by statute.

Defendants now move to dismiss the Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6), and the heightened pleading standard of the Private Securities Litigation Reform Act ("PSLRA").

## II.    LEGAL STANDARD

A party may move to dismiss a complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  When considering such a motion, the Court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party."  DeBenedictis v. Merrill Lynch & Co., 492 F.3d 209, 215 (3d Cir. 2007) (quoting Rocks v. City of Phila., 868 F.2d 644, 645 (3d Cir. 1989)).  To withstand a motion to dismiss, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Id.  Although a plaintiff is entitled to all reasonable inferences from the facts alleged, a plaintiff's legal conclusions are not entitled to deference and the Court is "not bound to accept as true a legal conclusion couched as a factual allegation."  Papasan v. Allain, 478 U.S. 265, 286 (1986).

The pleadings must contain sufficient factual allegations so as to state a facially plausible claim for relief.  See, e.g., Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009).  "A claim has facial

6

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). In deciding a Rule 12(b)(6) motion, the Court limits its inquiry to the facts alleged in the complaint and its attachments, matters of public record, and undisputedly authentic documents if the complainant's claims are based upon these documents. See Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

## III.  DISCUSSION

Plaintiffs allege that Defendants made or failed to make statements in violation of Section 10(b) of the Securities Exchange Act of 1934, codified as amended at 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5. To state a claim for relief under section 10(b), a plaintiff must plead facts demonstrating that (1) the defendant made a materially false or misleading statement or omitted to state a material fact necessary to make a statement not misleading; (2) the defendant acted with scienter; and (3) the plaintiff's reliance on the defendant's misstatement caused him or her injury. Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp., 394 F.3d 126, 143 (3d Cir.

2004). Claims brought under Section 10(b) and Rule 10b-5 must meet the heightened pleading requirements of Fed. R. Civ. P. 9(b) and the specific requirements of 15 U.S.C. § 78u-4(b), which is a portion of the PSLRA. Congress adopted these stringent pleading standards as "a check against abusive litigation," recognizing that "[p]rivate securities fraud actions. . . can be employed abusively to impose substantial costs on companies and individuals whose conduct conforms to the law." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 313 (2007).

The PSLRA "imposes two exacting and distinct pleading requirements." In re Aetna, Inc. Sec. Litig., 617 F.3d 272, 277 (3d Cir. 2010). First, with respect to false and misleading statements, a complaint must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation . . . is made on information and belief . . . state with particularity all facts on which that belief is formed." Id. (citing 15 U.S.C. § 78u-4(b)(1)). Second, the PSLRA also enhances the requirements of Fed. R. Civ. P. 9(b) and requires the complaint to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." Id. at 277 (citing 15 U.S.C. § 78u-4(b)(2)). A strong inference of scienter "must be more than merely plausible or reasonable – it must be cogent and at least

as compelling as any opposing inference of nonfraudulent intent." <u>Tellabs</u>, 551 U.S. at 309. A court must consider "whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." <u>Instit'l Inv. Grp. v. Avaya</u>, 564 F.3d 242, 267-68 (3d Cir. 2009)(quoting <u>Tellabs</u>, 551 U.S. at 321).

## A. False or Misleading Statements

The first issue is whether the statements alleged were, in fact, false or misleading. "A statement is false or misleading if it is factually inaccurate, or additional information is required to clarify it." <u>Wallace v. Sys. & Comput. Tech. Corp.</u>, No. 95-6303, 1997 WL 602808, at *9 (E.D. Pa. Sept. 23, 1997). Further, the failure to disclose a fact can also lead to liability under Rule 10b-5 "where silence would make other statements misleading or false." <u>Id.</u> In order to state a claim, then, plaintiffs must allege the existence of some fact, known to defendants at the time of the statements, the disclosure of which would have made the statement clearer or more correct. <u>In re Discovery Labs. Sec. Litig.</u>, No. 06-1820, 2006 WL 3227767, at *9 (E.D. Pa. Nov. 1, 2006). They must also demonstrate that, without the undisclosed fact, a reasonable investor was likely to be misled by the statement. <u>Id.</u> It is not

enough simply to show that there is additional information defendants could have provided that would have made the statement clearer. Id. Plaintiffs must also show that, in the absence of that clarification, there was a substantial danger that reasonable investors would be misled. Id.

## 1.    Category A Statements

Starting with the statements in Category A, Plaintiffs focus on statements in StoneMor's distribution announcements that it was performing well. See CAC ¶¶ 128, 133, 137-38, 141, 145, 150, 153, 167, 174, 178, ECF No. 67. These statements laud the "strong performance of [StoneMor's] base operations" and "continued strength in revenue growth and distributable free cash flow [that] allowed [StoneMor] to increase [] distribution." Id. at ¶¶ 167, 178. Defendants argue that these statements are "generalized 'positive portrayals'" and thus not actionable under federal securities laws. Def. Mot. at 20, ECF No. 68-2. It is well-settled that "vague and general statements of optimism constitute no more than 'puffery' and are understood by reasonable investors as such." In re Advanta Corp. Sec. Litig., 180 F.3d 525, 538 (3d Cir. 1999) (overruled on other grounds by Tellabs, 551 U.S. 308) (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1428 n. 14 (3d Cir. 1997). However, portions of the Category A statements go beyond

"puffery." Mainly, one StoneMor press release stated, "We determine the distribution based on the operation performance of the company and the resultant Available Cash at the end of the quarter. . .". CAC ¶ 137, EFC No. 67. The plain language of this statement goes beyond an unactionable statement of optimism, because it purports to state actual facts regarding how StoneMor funded distributions. Because Plaintiffs allege that StoneMor actually relied on equity proceeds to fund the distributions, (rather than operation performance) and its ability to do so was "almost entirely dependent on its ability to sell equity in the capital markets," (thus arguably not on "Available Cash") these statements are arguably false or misleading as plead. Pl. Resp. to Def. Mot. at 2, 19, ECF No. 74. Therefore, some of the Category A statements are at least arguably false or misleading.

## 2. Category B Statements

The Category B statements pertain to the connection between StoneMor's operations and distributions. StoneMor stated to investors and analysts that "[StoneMor's] primary source of cash from which to pay partner distributions . . . is operating cash flow." CAC ¶¶ 129, 155, ECF No. 67. Further, Defendants allegedly told investors, "you can feel comfortable that [StoneMor] generate[s] enough cash flow to pay a distribution in this period." Id. at ¶ 182. Plaintiffs argue that this was

false, because the distributions were paid using equity sales as opposed to operating cash, as Defendants stated. Id. at ¶ 17. However, those statements referred to the non-GAAP earnings and cash flows, which exceeded distributions because they included the case from pre-need sales that were in trust. Id. at ¶¶ 11, 155, 172, 182. Further, StoneMor also disclosed that its GAAP-measured cash flows were lower than distributions. Id. at ¶¶ 3,7,9,77,87-97. Because StoneMor's Category B statements referred to non-GAAP metrics, and were accurate portrayals of those metrics, they are not false. Similarly, because StoneMor also disclosed the GAAP metrics, and disclosed that GAAP-based operating revenues and cash flows were lower than cash distributions, the Category B statements were not misleading. Therefore, none of the Category B statements are sufficient to state a securities fraud claim.

### 3. Category C Statements

Next, regarding the Category C statements, Plaintiffs claim that Defendants made actionable misstatements about how StoneMor intended to use funds from its equity offerings. See id. at ¶¶ 143, 148, 156, 159, 162-63, 165, 170, 176, 179, 184, 186, 189, 191-92. For example, StoneMor allegedly denied that it paid distributions using the funds obtained from its equity offerings. Id. at ¶¶ 191-92. But Plaintiffs do not contend that

StoneMor actually paid distributions directly from equity offerings. Rather, Plaintiffs claim that these representations were misleading because StoneMor's equity offerings were used to pay down its credit facility, from which it primarily funded distributions. Id. at ¶¶ 96, 144, 148-49, 158, 160. Further, StoneMor explicitly disclosed, on multiple occasions, that it relied on equity offerings to pay down its credit facility, including in each of its Form 10-Ks during the Class Period. See Def. Exs. 4, 11, 15, 19, ECF No. 69-4. Because these statements were literally true, and the entire picture was publically disclosed, the Category C statements are not misleading.

### 4.    Category D Statements

Category D includes certain certifications made in Defendants' SEC filings, namely 10-Ks and 10-Qs. These statements are part of statutorily-required certifications under regulations promulgated under the Sarbanes-Oxley Act. See 17 C.F.R. §§ 240.13a-14. In pertinent part, these statements by Defendants report that, based on their knowledge, the information in the filings was accurate, and that they had designed and evaluated internal and disclosure controls. See CAC ¶ 197, ECF No. 67. On November 9, 2016, Defendants amended the certification they made on February 29, 2016, to state that recent auditing had revealed "material weaknesses" in certain

sets of internal controls. Id. at ¶ 198. Without explanation,

Plaintiffs assert that this amounts to securities fraud.

However, "there is nothing in either the 1934 Securities

Exchange Act or the Sarbanes-Oxley Act and implementing

regulations that authorizes plaintiffs to base a claim for

securities fraud on an alleged misstatement in a Sarbanes-Oxley

certification." In re Silicon Storage Tech., Inc., Sec. Litig.,

No. C-05-0295PJH, 2007 WL 760535, at *17 (N.D. Cal. Mar. 9,

2007). Further, Plaintiffs do not even allege with particularity

that Defendants knew at the time of certifying that the

statements were false. Finally, when a corrective disclosure has

no impact on the price of a security, the alleged misstatement

is immaterial as a matter of law. See In re Burlington Coat

Factory, 114 F.3d at 1425. Here, Plaintiffs do not allege that

StoneMor's unit price moved in response to either the

certifications or their correction. Rather, Plaintiffs claim

that the unit price dropped because StoneMor slashed its

distribution. CAC at ¶¶ 202-204, ECF No. 67. Therefore, the

statements in Category D are not actionable.

### B. Materiality

Having established that at least some of Plaintiffs'

claims (in Category A) may allege misleading statements and

omissions, the next issue is whether they are material. The test

is whether the information, if disclosed, "would have been viewed by the reasonable investor as having 'significantly altered the "total mix" of information' available to that investor*." In re Westinghouse Sec. Litig.*, 90 F.3d 696, 714 (3d Cir. 1996) (quoting TSC Indus. v. Northway, Inc.*,* 426 U.S. 438, 449 (1976)). Similarly, "[a]n omitted fact is material if there is a 'substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable shareholder.'" Shapiro v. UJB Fin. Corp.*,* 964 F.2d 272, 280 n. 11 (3d Cir. 1992) (quoting TSC*,* 426 U.S. at 449). Because the question of materiality is concerned with the "total mix" of information, "a statement or omission is materially misleading only if the allegedly undisclosed facts have not already entered the market." Winer Family Trust v. Queen*,* No. Civ. A. 03-4318, 2004 WL 2203709 at *4 (E.D. Pa. Sept. 27, 2004).

In a securities fraud case, "a motion to dismiss may be granted if the company's SEC filings or other documents disclose the very information necessary to make their public statements not misleading." In re Discovery Labs., 2006 WL 3227767, at *11 (citation and internal punctuation omitted)(dismissing claims and noting that "prior public disclosure negates a finding that material information was withheld"). See also Ieradi v. Mylan Labs., Inc., 230 F.3d 594,

599 (3d Cir. 2000) (dismissing Rule 10b-5 claims where allegedly omitted information was disclosed). Further, for purposes of the materiality determination in securities fraud, a "'reasonable investor' is neither an ostrich, hiding her head in the sand from relevant information, nor a child, unable to understand the facts and risks of investing." <u>Greenhouse v. MCG Capital Corp.</u>, 392 F.3d 650, 656 (4th Cir. 2004).

Here, it appears that StoneMor repeatedly and clearly disclosed the very information Plaintiffs allege was concealed from the market. For instance, the keystone of Plaintiff's claims is that the alleged misstatements "obscured the fact that the [StoneMor] paid the distribution[s] from its revolving credit facility, which in turn was paid down through the proceeds of a series of equity offerings." CAC ¶ 2, ECF No. 67. Plaintiffs claim that this "sleight of hand was furthered by reliance on arcane, non-GAAP accounting methods," which purportedly obscured the fact that, under GAAP accounting, StoneMor "actually generated only a small fraction of the revenue needed to pay [the distributions.]" <u>Id.</u> at ¶¶ 3-9. According to Plaintiffs, this "concealed [the] risk that distributions would be cut significantly if the Company's access to the capital markets was ever impaired." <u>Id.</u> at ¶¶ 136, 166. However, all of this information was repeatedly disclosed. StoneMor disclosed that its ability to pay distributions

16

depended on its revolving credit facility, which was paid down with equity offerings. Def. Mot. Ex. 15, ECF No. 68-2. StoneMor also disclosed its GAAP financials, as well as a reconciliation between its GAAP and non-GAAP financials. CAC ¶ 16, ECF No. 67.

Further, StoneMor disclosed that its GAAP revenues and operating cash flows were lower than cash distributions. Id. at ¶¶ 3,7,9,77,87-97. In addition to these disclosures, Plaintiffs themselves state that the "truth" of the "scheme" was recognized by investors long ago, based on publically available information. See id. at ¶¶ 54, 89, 90-94, 112-115. Thus, Plaintiffs essentially concede that no information was concealed. Even if StoneMor "focused investor and analyst attention on non-GAAP financial measures," it contemporaneously presented GAAP financial measures, which are not alleged to be inaccurate or misleading. Id. ¶¶ 69, 127-200, see also In re Calpine Corp. Sec. Litig., 288 F. Supp. 2d 1054, 1083 (N.D. Cal. 2003) (noting that "[o]ne would expect that if the use of non-GAAP measures by itself were actionable under the Exchange Act, corporations would have ceased using such measures a long time ago"). Also, Plaintiffs do not allege anything false or misleading about the reconciliation StoneMor offered between the GAAP and non-GAAP measurements. Because StoneMor disclosed all of the information that Plaintiffs allege it concealed, and a reasonable investor would account for the disclosed information,

17

Plaintiffs have not sufficiently plead a material omission or misstatement.

### C. Scienter

The next requirement imposed on a Rule 10b-5 claim is that a plaintiff must allege that a defendant acted with scienter. Scienter is "a mental state embracing intent to deceive, manipulate, or defraud." Tellabs, 551 U.S. at 319. Under the PSLRA, for each alleged misstatement, plaintiffs must "state with particularity facts giving rise to a strong inference" of scienter. 15 U.S.C. § 78u-4(b)(2). Plaintiffs may create that inference by alleging facts "establishing a motive and an opportunity to commit fraud, or by setting forth facts that constitute circumstantial evidence of either reckless or conscious behavior." Advanta, 180 F.3d at 534-35 (quoting Weiner v. Quaker Oats Co., 129 F.3d 310, 318 n. 8 (3d Cir. 1997)). It is not enough, however, simply to allege that defendants stood to benefit from the alleged misstatements or had the opportunity to commit fraud. Advanta, 180 F.3d at 535. In addition, "[m]otives that are generally possessed by most corporate directors and officers do not suffice; instead, plaintiffs must assert a concrete and personal benefit to the individual defendants resulting from this fraud." GSC Partners CDO Fund v. Wash., 368 F.3d 228, 237 (3d Cir. 2004) (citation omitted).

Plaintiffs first attempt to show scienter by enumerating the ways in which the Defendants possessed power, insider knowledge, authority, and control over StoneMor's public statements, distributions, equity sales, and the use of equity sales to indirectly fund distributions. CAC ¶¶ 209-14, ECF No. 67. Plaintiffs argue that such access and control creates a strong inference that Defendants knew that the alleged misstatements were false or misleading. Id. at ¶¶ 210, 214, 216. Plaintiffs further argue that some of Defendants' responses to questions by analysts were evasive, suggesting scienter. Id. at ¶ 219-23. Next, Plaintiffs argue that Defendants' knowledge can be inferred because, under StoneMor's partnership agreement, Defendants received additional distributions when StoneMor issued distributions beyond a certain threshold. Id. at ¶ 224. Also, Plaintiffs claim that the retirement of StoneMor's founder - six months after the distribution was cut – as well as CFO turnover (four CFOs or interim CFOs during the Class Period) raise a strong inference of scienter. Id. at ¶¶ 230-32.

Additionally, plaintiffs attempt to show scienter under a recklessness theory. In 1979, the Third Circuit adopted the Seventh Circuit's definition of recklessness in this context. A reckless statement is one that is "highly unreasonable" and involves "not merely simple, or even inexcusable negligence, but an extreme departure from the

standards of ordinary care, and which presents a danger of
misleading buyers or sellers that is either known to the
defendant or is so obvious that the actor must have been aware
of it." McLean v. Alexander, 599 F.2d 1190, 1197 (3d Cir. 1979)
(quoting Sundstrand Corp. v. Sun Chemical Corp., 553 F.2d 1033,
1045 (7th Cir. 1977)). The Tenth Circuit applied the Seventh
Circuit standard to a post-PSLRA case involving failure to
disclose allegedly material facts in City of Philadelphia v.
Fleming Companies, 264 F.3d 1245 (10th Cir. 2001). The Tenth
Circuit noted that "it is the *danger of misleading buyers* that
must be actually known or so obvious that any reasonable man
would be legally bound as knowing." Id. at 1260 (emphasis in
original) (quoting Schlifke v. Seafirst Corp., 866 F.2d 935, 946
(7th Cir. 1989)). Under a recklessness theory, knowledge can be
shown by demonstrating that the fact "was so obviously material
that the defendant must have been aware both of its materiality
and that its non-disclosure would likely mislead investors." Id.
at 1261; Wilson v. Bernstock, 195 F. Supp.2d 619, 639 (D.N.J.
2002).

As noted above, the alleged misstatements were not
material. Even if they were arguably material, the very fact
they appear immaterial demonstrates that they are not "so
obviously material" as to allow a finding of recklessness under
the standard in City of Philadelphia. 264 F.3d at 1261. See also

<u>In re Discovery Labs.</u>, 2006 WL 3227767, at *14. Therefore, Plaintiffs have failed to adequately plead scienter as the PSLRA requires.

### D. Section 20(a) Claim

In addition to their Rule 10b-5 claim, Plaintiffs also assert violations by controlling persons under Section 20(a) of the '34 Act, 15 U.S.C. § 78t(a). Because a claim for controlling person liability requires "proof of a separate underlying violation of the Exchange Act," <u>Advanta</u>, 180 F.3d at 541, and the underlying 10-b claim fails, the Section 20(a) claim also fails.

## IV. CONCLUSION

For the reasons stated above, the Court will grant Defendants' motion to dismiss as to both counts of the Complaint.

An appropriate order follows.